Case number 16-1007. Eric Friedman, Petitioner v. Federal Aviation Administration. Mr. Chen for the Petitioner, Ms. Sheridan for the Respondent. Good morning. Good morning, Your Honors, and may it please the Court. This case arises out of an undisputed impasse between the FAA and Friedman. The FAA's unchanging position is that, for insulin-treated diabetic pilots, continuous glucose monitoring data is a prerequisite for first-class medical certification. Friedman has repeatedly declined such requests, which would require him to insert a sensor under his skin for 90 days, pay thousands of dollars out of pocket, and disregard the considered advice of his long-time treating physicians. Well, it's certainly an impasse, but is it final agency action? Yes, Your Honor. In this case, the impasse is final, and that's because the impasse marks the consummation of the FAA's decision-making process, and we see that in several places. In particular, at JA-51, Friedman makes crystal clear for the third time to the FAA that he, quote, does not use a CGM, and therefore the FAA should make a decision based on the present record. At JA-53, the FAA responds one week later and states that it is, quote, unable to proceed. And now, in its brief before this Court at page 26, the FAA concedes that, to the extent Friedman will not provide CGM, i.e., the situation here, the parties have reached an impasse. And the reason that the impasse is necessarily final here, Your Honors, is that agreement about the unchanging status quo must evidence a denial. That is what the FAA has said repeatedly in its brief at pages 11 to 14. It stresses that CGM is required and necessary, and, indeed, that is the exact result that the FAA forecasted to Mr. Friedman and continues to forecast here. At JA-55, in its third letter to Mr. Friedman requesting CGM, it states, if you are unable to provide this information, we will have no alternative except to deny. And that's something that it continues to say in its brief. And here we think that the FAA should not be able to avoid judicial review by indefinitely withholding a formal acknowledgment. To be sure, the FAA states that, in its letter at JA-47, that the first-class application remains under consideration. But we think that label is belied by the record. And, in any event, this Court does not ultimately look to the label that the agency affixes to the action. Instead, it takes a pragmatic approach to finality where, effectively, final action not acknowledged is nonetheless final. But the agency, I mean, maybe your best response is what you've just said, but the agency says in its September 1st letter, we look forward to reviewing that information when you are able to provide it. So they've said, this is an ongoing process. We're seeking more information so we can start our review. And you haven't provided it. Well, Your Honor, that's correct. It does say that. And I would point out that, in its brief, the FAA essentially takes two scenarios. The first scenario is that Mr. Friedman might actually submit this CGM data. But, as I've stated at JA-51 and 53, that's not going to happen. We've had a back-and-forth exchange over more than six months. Where is that in the record that your client has stated, I will not provide this? It's not a question of we're in a back-and-forth negotiation, and maybe when I realize that your position in FAA is really firm, then I will cough up the money and go through the hardship of providing it. Is there anywhere where he said, no, my final position is I will not provide it? Well, no, there is not, Your Honor. But what I would say is that this sort of exchange between the parties is very clear. It's clear that he does not use a CGM. It's also very clear that it's not medically indicated, and he has repeatedly asked the FAA to explain why he should undergo CGM therapy without and absent that explanation, which is clearly not coming at this point, we would say that, essentially, that's the result that we have here. But that kind of exchange, I think, undermines your point to the extent that the question is, are the parties in a process of negotiating that the FAA could reasonably have thought was ongoing or have they each crystallized in their position, in which case it might be final? And you said, well, you know, it's not medically indicated, but, you know, the FAA may be thinking we're in the process of making a big change in policy. We have the safety of a lot of people on our shoulders, and we'd like more than what is medically indicated for the individual's care. We'd like some information that goes beyond that. And so to the extent that your client has not said, sorry, you know, process it based on what I've given you or don't process it at all, like that's it, he hasn't said that. That, I think, undercuts a little bit your position on finality. Well, Your Honor, just because it's not explicit doesn't mean that's not the case here. And here I would look to the FAA's actual statements. They actually say we are unable to proceed. They are not considering anything else that we know of at this point. They have the data that they have. She's made his – I mean, the FAA has made its position clear, but has your client made his position clear? Are they waiting for him to come around? Well, Your Honor, I think he has made that position clear, although he doesn't say that he flatly will not do it. They have not provided the explanation on three occasions, and we think that three occasions is more than enough. This has gone on for several months, and nobody is breaking the impasse. There is an acknowledged impasse here that the FAA agrees with. But formally, until they've made – taken final action, they don't actually have a duty to explain their action. It's finality that triggers that duty now. Well, again, Your Honor, I would look to the FAA's statements where it says, if you do not provide this data, the consequence is that we will have no alternative except to deny your application. And it follows that up immediately by saying, you know, we're not considering anything further at this point. And so at that point, the agency has consummated its decision-making process. There is no more thought that the agency is giving to this question at this time, and we don't think that given – Let me ask it another way. What is the relief that your client is seeking? We are seeking a remand for the FAA to consider and dispose of the application on the merits within 30 days without regard to CGM data. And we think that is well supported by the record here. The record uniformly and explicitly undercuts the FAA's claims about the medical relevance of CGM data, which is the standard here, we think. The FAA's sole support for its request for CGM data is the ADA's letter at JA65. But it takes that letter entirely out of context, we would say. The relevant statements in that letter are that CGM is neither necessary nor appropriate for making medical certification decisions and is less accurate and that its use would be less accurate than glucometer data and would invite confusion and misinterpretation. Where in the administrative record did your client request that relief of the agency? Consideration of his application on its merits without regard to CGM data. I believe he says it in his response at JA51. That's the letter. It might be on pages 52 or 53. But I believe he says, if you are not able to provide me with an explanation, I hope that you would proceed on my application based on the present record. That's what I believe it says on JA51. And also on page 52 at the very end. You said, I think, in response to Judge Pillard's question, that what you wanted is a remand to the agency for them to dispose of the application. Do you want them to dispose of the application or do you want an explanation? Well, either would do, we think, Your Honor. But we do think that they should either grant or deny it. And obviously, under APA review, we think they have an obligation to explain that denial. But, yes, we would want them to either grant or deny without regard to the CGM data, which we think the record does not support the FAA's consideration of in this circumstance. Sort of a funny situation where to get finality and give this court jurisdiction, you have to say the agency has made a final decision. In effect, it's denied the application. And so, sort of, where is your client? So, necessarily, I thought you were going to say either we have to reverse, because it's arbitrary and capricious, and then let the agency figure out what it's going to do next with your client. That's why I'm not totally clear about if we have jurisdiction, what relief you're seeking. Well, that's essentially what we are asking for, Your Honor. And the reason is what we consider is that the FAA has denied the application for lack of CGM data. That's what it actually says in its brief at one point. It says, Mr. Friedman knows why his application has not been acted upon, or granted, I think. That's what it says in its brief. And so, ostensibly, the reason is that he has been denied for lack of CGM data under their FAA regulations. And at that point, this would be a situation in which a remand would essentially reverse that denial and revive the application so that it can be considered further on its merits. All right. But if their action is to deny it, do you have to come back and then argue that that's arbitrary and capricious? Well, yes, that would be the further step down the road, Your Honor. That's not necessarily an issue that this court would have to take on now. What we do think the court should take on, though, is the fact that CGM is no longer an issue that is supported by the record. That request cannot be made and they cannot deny his application because he did not submit the CGM data. That decision is arbitrary and capricious. What I'm trying to understand here is the regulations say, under the provision which your client is proceeding, that the surgeon has discretion. And furthermore, somewhere that the administrator, you know, the FAA, can condition the granting of a new authorization on the results of subsequent medical tests. And it's not as though, at least in my view, the request is for a medical test that is irrelevant to the issue. And reasonable medical personnel experts may disagree about the relevance of this. But the surgeon on whose decision our lives all depend is saying a very conservative position. I want everything. And he's not even saying that. He says, I want this one other standard procedure. And so to say it's arbitrary and capricious, we have to get to when the surgeon asks for additional medical information, he must explain why he needs that information. Is that the result of a reversal here? Especially, if I could just add, in view of your argument that the FAA has not developed, what, a protocol or guidance for the first class medical certificate. Well, Your Honor, we think that it's telling that the explanation is not in the record. That itself is arbitrary and capricious. And this is not a case in which the FAA has not had the opportunity to explain. Friedman has asked the FAA several times. You can see this on JA-31-41-15. Right, but I guess my point is, isn't it obvious? I'm sorry, I don't follow, Your Honor. Well, he wants a special certificate. He acknowledges he has a condition as to which the FAA has given special attention. The surgeon says, I appreciate the information you've submitted, but I want data from this additional test. And would we be holding necessarily that's arbitrary and capricious? Because any time you ask for additional requests, a test, you have to tell us why. Well, Your Honor, we think that here that discretion has to be exercised, obviously, within bounds. And here there are very clear bounds. Section 4 of the Pilots' Bill of Rights addresses this precise scenario. It tells us that requests for information must be relevant to individuals' medical qualifications and, more importantly, align with present-day medical judgments. Well, you're not asking us to say that this test is not relevant, are you? Well, Your Honor, I think the record clearly supports that. The question here for this Court is whether or not the FAA has justified the medical relevance of this test. And the record evidence is uniformly in Mr. Friedman's favor. Everything in the record says that this is not relevant. It's less accurate than actual data that the FAA could ask for. I realize that the FAA hasn't done this, but I'm just interested in your view of what would be a minimally adequate explanation. Could the FAA have said to Mr. Friedman, well, we have an outright ban, we're considering opening it a bit on a case-by-case basis, we also have a weighty safety obligation, and we haven't made a final determination on generally how we're going to deal with these cases. We're doing it with baby steps. We want a lot of information now. We want more than what might satisfy us with respect to each incoming applicant. We want to get a picture of how pilots with insulin-dependent diabetes operate generally. So we would like belt and suspenders. We would like continuous glucose monitoring, as well as the other information that this person's prescribed protocol produces. Would that be purposeful, and would that be an adequate explanation? Well, Your Honor, I think that it would depend on the request. Because, again, the question is medical relevance. I don't think anybody disputes that the FAA could ask for something like exploratory surgery just because it wants to know the answer. And so in that situation, we would say that the FAA has discretion to act, surely. It can create a protocol, it can make medically relevant requests, but it cannot make unjustified requests. Next. What is provided? I mean, can you get the historical information that CGM provides through a recording glucose emitter? It's a different kind of information, isn't it? You don't get the automatic, seamless path of data. You get data that the patient chooses to trigger, no? That's correct, Your Honor. And the point is that that difference is material, that the glucometer readings are actually accurate, and that there are dips and spikes that can be recorded by the CGM. That might be valuable for people trying to manage their diabetes. Somebody, for example, that is going on a run all the time, right, who trains a lot, and wants to know how their diabetes behaves as they're running or something like that. They're not going to stop every 15 minutes and, you know, prick their finger. What they're going to do is say, well, you know, I'd like to collect some data. I know the limitations of the data. And, indeed, the FAA recognizes the limitations of the data. At JA-54, when it requests the data from Friedman, it says, please submit this data for 90 days and make sure you calibrate your CGM at least three to four times a day. That, in and of itself, we think, is an acknowledgment that, you know, this data is not rock solid. It is useful in some situations, but the record shows that it is not useful for this inquiry. I guess I'm trying to find out, is it your position that were the FAA to offer the kind of explanation that I suggested, would that be impermissible? You said, well, it would be impermissible to demand exploratory surgery. But I'm not, that's not my hypothetical. My hypothetical is to demand continuous glucose monitoring data. Were they to do that? Is there anything in the FAA's regulations and the idea about medical relevance that's so individuated that it would be impermissible to request that? Well, Your Honor, just to, so as I understand your hypothetical, just the fact that they are asking for data because they are trying to develop a protocol, it would still be impermissible to ask for the CGM because that is not a medically relevant request from Mr. Friedman. So they can't use individual applicants as a research tool? Because clearly it could be relevant to their policy, but that's why they have to go to the American Diabetes Association. That's correct, Your Honor. There are no further questions. Thank you. Thank you, Your Honor. Good morning. Good morning, and may it please the Court. Amanda Sheridan for the FAA. The only decision that the Federal Air Surgeon has made in this case is that he cannot proceed with a final determination on Mr. Friedman's request for a special issuance first-class medical certificate until he receives 90 days of continuous glucose monitoring data from Mr. Friedman. He has made no decision on the ultimate question, again, which is Mr. Friedman's ultimate request for an exemption from the medical standards in 14 CFR Part 67. Well, come on. The FAA knows that Mr. Friedman isn't going to provide CGM. He's made that clear, and his counsel in the letter that he sent asking for further information said, hey, if you can't answer these questions, at least make a decision here. Your Honor, we know that now because he's filed a petition for review. It's in the letter. Well, he never clearly stated, Your Honor, that he was not going to provide the information. He did state, as counsel said, that it's not something that he has now. It's not something that his doctors have required him to have to manage his disease. And certainly, you know, there's an indication, perhaps, that he might not be willing to provide this information. But at the last point in time at which the federal air surgeon corresponded with him, you know, Mr. Friedman didn't make clear at that point in time when we reaffirmed our request for the data that he wasn't going to provide it. I think our doctors always operate on the assumption that anybody who is seeking, especially an exemption from the medical standards, will want to provide as much data as possible for us to make a decision on that point. Well, your letter said initially if we don't get this in 60 days, it's going to be denied. Then it said if we don't get it in 30 days, it's going to be denied. But that did not happen. How long can you leave him in limbo? I mean, is there any limit to how long you can just decline to complete this decision? There are no specified time limits, Your Honor, either in the statute or in the regulations for the federal air surgeon to make a decision. However, in November of 2015, that is the first specific request that the federal air surgeon made to Mr. Friedman for the continuous glucose monitoring data. We didn't receive anything at the time that we issued him a renewal of his third-class special issuance medical certificate in December 2015, and at that time, in the same letter, told him that we were still willing to consider his application for a first-class special issuance. And because we'd requested 90 days' worth of data at the earliest, we would think that if he was going to respond and we were operating under the assumption that he would, we would receive that data in probably February or March of 2016. Has the FAA ever said, or is it—actually, let me ask first, is it the FAA's position that continuous glucose monitoring is, in the view of its doctors, medically indicated for Mr. Friedman? Your Honor, in the point of view of the federal air surgeon, the continuous glucose monitoring data is medically indicated for the purpose of making an aeromedical aviation safety decision. We understand that Mr. Friedman's doctors do not recommend this particular course of monitoring for his treatment. They feel that he is being well-managed with the finger-stick glucose test that he performs. But the federal air surgeon is looking for a more comprehensive picture about Mr. Friedman's glycemic management than those finger-stick tests can provide. Where in the record does it say that? It does not, Your Honor, say that specifically in the record. The federal air surgeon actually, through the assistant administrator for aviation safety, did communicate to Mr. Friedman that we would be requiring additional information beyond that which he submitted in support of his request for a third-class special issuance in order to make a decision on his request for a first-class special issuance. Why does the FAA want this information? What's going to show that a doctor's exam of this individual is saying he's really very carefully controlled? What more is this going to provide? The federal air surgeon is interested in looking at the 90 days' worth of monitoring, which will show a near real-time data of the fluctuations in Mr. Friedman's glucose level. They provide a stream of constant data points versus the intermittent snapshots that you would get from finger-stick glucose testing. And it would be able to show the federal air surgeon over a period of time any insidious changes in Mr. Friedman's glucose level, changes such as a drop in blood sugar that perhaps would require mitigation of some type, but that Mr. Friedman may not have symptoms or awareness of and then be able to take those steps to mitigate that. And that's important when we're talking about allowing someone to operate outside of the medical standards and potentially have the ability to fly hundreds of passengers for a major airline. We've never done this before. We've only certified people to fly privately. And so we're taking a more conservative position here because obviously we tolerate a very low amount of risk when it comes to major airline operations. We can tolerate a little more risk when it comes to private pilot operations. But the agency did convene this expert panel, right? And that was something that the agency did in trying to assess risk, I'm assuming, for people who are insulin-dependent. Yes, ma'am. And it seems to me from this record that the expert panel doesn't agree with the FAA's position that this is necessary. So on what ground is the agency disagreeing with its panel? Your Honor, you are correct. The FAA did ask for input from the American Diabetes Association in providing its expertise, which is in research into diabetes treatment and management, into making some recommendations for a future protocol. But that's just part of the deliberation here. That's part of the information that's being considered. Reasonable medical minds can disagree. And while the ADA certainly has expertise in the research associated with diabetes, in terms of the treatment of individuals with diabetes, and in terms of advocacy for those individuals, it is the FAA that has expertise in aerospace medicine and aviation safety. And it's to that expertise to which this Court should defer in finding that it's a rational exercise of the Federal Air Surgeon's authority to request this data. Did I misunderstand? I know that there were members of the ADA who were part of this panel, but I thought there were also other members who do have expertise in aeronautical medicine. Is that incorrect? No. No, Your Honor. Even the FAA sat in on these discussions. They didn't actively participate, but they were at these meetings. So no, you're not entirely incorrect in that. There were, I believe, some individuals who did have some expertise in aerospace medicine. But the important distinction there is that it's the FAA who's been charged and delegated the authority by Congress to set medical standards, to set aviation safety regulations, and, importantly, to determine what is in the public interest when they're allowing someone to operate outside of that regulatory scheme. So is it the agency's position then that no matter who they convene and no matter what these experts say, ultimately they will make the decision? They don't have to follow what the experts tell them? Ultimately, it will be up to the Federal Air Surgeon to make the final decision, obviously viewing all of the data that he has available to him, including the expert recommendations from the ADA panel that was convened. At this point in time, he does disagree with their position on whether Can I ask a question? Do you disagree with Mr. Chen that your regulations limit you to requesting medical information on what's medically indicated for the individual? No, Your Honor. You agree with that? No, we disagree. We disagree with that. To the extent that he Can you point me where I should look on the medical, on the sort of scope of medical information that you believe you're entitled to request? Yes, Your Honor. Certainly, if you take a look at the regulations in 67-413. Do you have an appendix site? That's all right, go ahead. Sorry, Your Honor. That regulation allows the Federal Air Surgeon to ask for information that is rationally connected to the risks that might be posed by the medical condition that this person has, to the aviation safety risks that this person has. I'm sorry, did you say 413? Yes, Your Honor, 67-413. And so that allows the Federal Air Surgeon to ask for that information if he needs it to make a decision as to this person's medical fitness. And it also has a provision wherein if the individual does not provide it, that can be used as the basis for denying an application or if the person already holds a medical certificate to suspending or possibly revoking the certificate that they currently hold. Anything further? Oh, I have one question about what's sort of the order of operations in an application process? Because there's some information saying that if you have a medical exam, it's only good for six months, and then it expires. Do you have to get a medical exam and then apply, or do you apply and then you get scheduled for a medical exam? Or how does that all work? How does that work? Certainly, Your Honor. So if one were applying, just applying for a medical certificate, an unrestricted medical certificate, you would go to an online website called MedExpress, and you would fill out all of the application paperwork on that website. And then you would show up at an aviation medical examiner's office to take the physical examination portion, at which point after that exam was completed, the aviation medical examiner would transmit that information to the FAA. In this case... And then you submit an application, or that is the application? That is the application. So you don't trigger anything before you go to MedExpress? You don't pull down some application and have that pending before you go to MedExpress? No, MedExpress would be the first point in time at which you start to complete the application process. You can complete your portion, the individual's portion of MedExpress, long before you ever go to a doctor for the examination. And if you never go to the doctor, then eventually that work that you have done will eventually expire from the system. But once you go to the doctor for the examination, at that point you've triggered the application. You have completed your application once you have the examination. And when relative to that process do you say, you know, I have trained at X and so flight school, and I have so many hours, and I'm experienced, I'm not experienced? That would be during the MedExpress portion when you are home on your computer and you are filling out all of the relevant demographic information and medical history information on that portion of the application. And is that the electronic profile that only lasts six months? No, Your Honor. So what Mr. Friedman has argued, he went on his own to an aviation medical examiner after completing the first part of the application on MedExpress. He went to an aviation medical examiner for an examination. And the aviation medical examiner properly deferred his application because Mr. Friedman has a condition which specifically disqualifies him from holding an unrestricted medical certificate. Now, had he been issued a medical certificate, that medical certificate for a first class for an individual over the age of 40 would have a duration of six months. At the end of that six months it would downgrade to the next class of certificate, which is the second class certificate. There are no time limits in either the regulations or the statutes applying to the FAA that require in this context, which is he's asking for an exemption from the regulations, that require us to make a decision in X amount of days. If the federal air surgeon eventually receives the information that he has asked for and makes a decision on the ultimate question of whether or not Mr. Friedman's eligible for a first class special issuance medical certificate, assuming that he does decide that that is the case, then if a new medical examination is needed, the federal air surgeon could simply direct Mr. Friedman to go and get a new one. There is nothing fatal to this process by the length of time that has elapsed between the time that Mr. Friedman went to an aviation medical examiner in this case and where we are now. Is there a different process for a third class certificate? Your Honor, the beginning of the process would be the same. The difference here is that there are two decisions that have been made by the federal air surgeon in this case. The first is that based on the information that he had available to him, he found Mr. Friedman was eligible for a third class special issuance. Mr. Friedman asked him to renew one that he already had, and based on the information that the federal air surgeon has now, he was able to make that decision and give him a third class special issuance. So it is possible to have this renewed without formally filing an application that says I'm looking for a third class certificate? Yes, Your Honor. There's instructions given in every authorization as to what someone must do in order to renew it. It may not always require a new medical examination. So just let me follow up here a little, and I realize this may be fairly speculative, but your brief takes the point that an impasse has been reached. The surgeon wants the information. The petitioner is not going to provide it. Is that your position? Well, certainly he's indicated to us by filing a petition for review that he does not wish to provide it, Your Honor. I just want to understand what you think the implications of impasse are. In other words, I can think of numerous situations where I'm trying to get something, and the agency says, but I need something, and I say I'm not going to provide it. Is that an impasse that gets a final order and gives us jurisdiction? Following up on that, were we to say we have jurisdiction, were we to grant the petition, what do you see happening on remand in the context of what is now in the record? Well, to take the first part of your question, Your Honor, I don't believe the impasse at this point creates final agency action. I think that the agency certainly, had it received clear communication from Mr. Friedman that he did not intend to provide this information, the agency at that point could have explained that it was denying his request for an exemption and could have provided some explanation as to why that was occurring. But the agency had no such opportunity in this case. Why didn't it just go out ahead and deny the application? Excuse me, Your Honor? Why did the agency not go ahead and deny the application? Well, Your Honor, in terms of why didn't the agency, after the petition for review was filed, the Federal Air Surgeon didn't feel that it was appropriate to No, no, no, excuse me, I didn't mean that. I meant that at the point this exchange is going back and forth and the final communication says, you know, we're granting the third-class renewal and we're treating your first-class application as still pending. At that point, they could have said, but since you haven't provided us with the information, we're denying it. Does the regulatory scheme have some contemplation that once denied, then there's a bar to reapplying? I mean, what is the interest in keeping this pending this way? There is no bar, certainly, Your Honor, to reapplying once denied. So why wouldn't the agency just clear its docket? Well, Your Honor, that's something the agency, you know, could have done. It chose not to because it had asked for 90 days' worth of data and it was assuming that Mr. Freeman was going to provide it. So that's the implication from the communication that the agency had not clearly yet been told that the petitioner, Mr. Freeman, was not going to provide the information. That's correct, Your Honor. I see. And where is your clearest statement of your reasons for insisting on CGM? Your Honor, we don't have a very clear statement of that in this record at this time because we weren't able to develop that. The federal lawyer-surgeon is still seeking the information and still deliberating about how it's going to be used in determining whether or not somebody is going to get an exemption. Is that enough of a reason under the applicable APA standard of reason to say, We are studying this. We are not confident yet that we have enough information to grant you an exemption. Therefore, in this period when we are still in the policy development phase, we are unwilling to grant. Without prejudice, we deny your application. Why is that not the reason? Why is that not the reason? Or is that? I mean, if you had denied that, would it hold up under judicial review? I think it could, Your Honor. I think certainly if the federal lawyer-surgeon had the opportunity to make a final denial in this case and to explain himself, that essentially is what he would say, is that I've determined that I need this information to move forward, and without this information, I cannot. So following up on the questions I was pursuing, if this went back to the agency and the surgeon, pursuant to the court's opinion, provided an explanation and said basically what you've been telling us this morning, then Mr. Friedman says, I'm still not going to provide it because it's arbitrary and capricious, this explanation. Then we're back here again on the same points that are being raised here today? Yes, Your Honor. I believe that would be the case. So how does this matter come to a close? I mean, this is an applicant who's trying to seek a job and presumably has bills to pay, you know, a life to live. And the fact the agency's studying something because this is new, that's at least arguably not a good enough reason to keep him in limbo. I mean, you could simply say we're studying it, we think we need it, we're denying it. And that, I believe, is what would happen, Your Honor, if this case is remanded to the agency and if Mr. Friedman does not provide the information. So if we were to remand, we would have to be somewhat clear about the nature of the explanation that would be provided, if that's the rationale behind a remand? In other words, Judge Pillard suggested one type of explanation. I'll call it a bare minimum explanation. Another type of explanation, you know, would be a fairly thorough medical explanation or even more detailed along the lines you offered here today. Is that correct? That the court would have to provide guidance to that? I'm just not clear how this case moves ahead, all right? And what the petitioner has said, send it back and tell the agency to make a decision in 30 days. It doesn't make a decision in 30 days or provide us with this explanation to make a decision. He still doesn't have the license and he's back here. And that's why I asked counsel, is he requesting that we make this determination, as it were, that the surgeon general must provide or the air surgeon must provide some sort of, what, before it can deny? Well, certainly not before it can deny, Your Honor. In the process of denying and communicating the denial, it would be appropriate to provide an explanation. Well, what I'm thinking of is it goes back and the surgeon general comes up with explanation A and the petitioner says, that's no good. So the air surgeon says, here's explanation B. The petitioner says, that's still no good. We're going to go back to court. So he says, well, I'll give you explanation C. Anyway, all right. Thank you, Your Honor. Thank you. Counsel for petitioner. Thank you, Your Honor. In my brief time, I'd like to make three brief points. The first is that, to Judge Brown's questions, there were medical experts that were aviation medical experts at the panel. You can see them clearly on the cover at JA 368. At or part of? I don't know if they're technically part of the five or the seven that are considered, but they are listed on the cover. They participated. And moreover, I would point out that the ADA has experience with the FAA. The third class protocol that was developed in the mid-'90s was with the help of the ADA. So it's not like the ADA is just sort of doing this in a vacuum. They know how this medical evidence bears on things that the FAA is considering. The second point is that with respect to the regulations and the discretion, I would point the court to 14 CFR 67.401C. That's Addendum 14 of the Blue Brief, where it states that the air surgeon may consider the person's operational experience and any medical facts that may affect the ability of the person to perform. And moreover, beyond that, I would say at Addendum 8, you have the Pilot's Bill of Rights, which specifically addresses this situation. The third point I would make— I don't see how C helps you. Well, Your Honor, we think that is evidence of the constraint that the FAA is putting on itself. And while it does say may, at the same time— and I would point out that this is the special issuance regulation itself. And so it is suggesting that, you know, we will only ask questions. That's the way I read the regulations. I see. And beyond that, we have, of course, the Pilot's Bill of Rights, which is Congress's command. The third point is with respect to the remedy and the state of the record, I would point the Court to the safe extensions case, which is cited in both briefs. And there you have a situation where the FAA's explanation surfaces for the first time in an appendix to its appeal brief. And the Court very clearly says, you know, this record is exceedingly thin, but it's sufficient for review. Either the agency hasn't identified its reasons for making this decision, or it has no reasons. Either way, that violates the APA. And here, I think, today, we still have not heard FAA counsel articulate any reason why this application is being held. And while reasonable medical minds can disagree under the APA, if there's no justification for their disagreement and there is not in this record, that is a violation of the APA. And for those reasons, we would ask the Court to grant the petition. Thank you. Thank you, Your Honor. Let me just ask you, how long does the American Airlines job remain open? Unfortunately, Mr. Friedman had been furloughed, as you know, and he had had a right of return. It actually expired in August, and so he no longer has a right of return as of last month, unfortunately. Thank you. We'll take it under advisement.
judges: Rogers, Brown, Pillard